**HESTER INDUSTRIES, INC., Plaintiff–Appellee–Cross–Appellant,**

v.

**TYSON FOODS, INC., Defendant–Appellant–Cross–Appellee.**

**Nos. 97–9606, 97–9608.**

United States Court of Appeals, Second Circuit.

Argued July 14, 1998.

Decided Nov. 20, 1998.

Robert W. Adams, Nixon & Vanderhye, P.C., Arlington, VA (Duane M. Byers, Robert A. Rowan, J. Scott Davidson, Nixon & Vanderyhe, P.C., Arlington, VA, Richard A. Kohn, Thuillez, Ford, Gold & Johnson LLP, Albany, NY, of counsel), for Plaintiff–Appellee–Cross–Appellant.

Jonathan J. Lerner, Skadden, Arps, Slate, Meagher & Flom LLP, New York City (Christopher P. Malloy, Skadden, Arps, Slate, Meagher & Flom LLP, New York City, John R. Cleary, Shughart Thomson & Kilroy, Kansas City, MO, of counsel), for Defendant–Appellant– Cross–Appellèe.

Before: MINER and CABRANES, Circuit Judges, and COVELLO, District Judge.*

MINER, Circuit Judge:

Defendant-appellant Tyson Foods, Inc. ("Tyson") appeals from a judgment of the United States District Court for the Northern District of New York (McAvoy, C.J.) imposing upon defendant a civil contempt fine of $8,599,272.84 based on defendant's

* The Honorable Alfred V. Covello, Chief Judge of the United States District Court for the District of Connecticut, sitting by designation.

violation of the terms of a settlement agreement that the court had referred to in its prior order dismissing plaintiff's trademark dilution action, and from orders granting partial summary judgment in favor of plaintiff Hester Industries, Inc. ("Hester"), denying defendant's motion for partial summary judgment and denying defendant's motion, pursuant to Fed.R.Civ.P. 59(e), to alter or amend the district court's judgment. Plaintiff-appellee cross-appeals from the district court's final judgment to the extent that the court's monetary award was purportedly deficient.

For the reasons that follow, we vacate so much of the judgment as imposes a fine for civil contempt and remand for further proceedings consistent with this opinion.

## BACKGROUND

In August of 1989, Hester, now operating as a division of ConAgra, Inc., commenced a trademark dilution action against Tyson alleging, *inter alia*, that Tyson's use of the words "WING FLINGS" in connection with its sale of frozen raw chicken wings diluted Hester's "WING DINGS" mark in violation of the laws of the State of New York and other states. Hester uses its WING DINGS mark in connection with its sale of precooked, pre-seasoned chicken wing products.[1]

Just before trial, however, the parties entered into a settlement agreement (the "Agreement"). The Agreement was signed by the parties and attached to a "Stipulated Order of Dismissal" entered by the district court on April 9, 1992. The Agreement required Tyson to discontinue all use of the WINGS FLINGS mark. Specifically, pursuant to Section 2 of the Agreement, Tyson agreed not to order any new packaging or other materials bearing the WING FLINGS mark. Moreover, it agreed to phase out existing WING FLINGS inventory according to a prescribed schedule. Tyson estimated that existing inventory of a certain five-pound product bag "should be exhausted by September 1, 1992" and all other inventory bearing the mark "should be exhausted by December 1, 1992." The Agreement stated that "if Tyson has not exhausted its existing inventory at the end of the[se] periods, ... Tyson will then inform Hester of the new estimated time for exhausting this inventory." However, the Agreement allowed the aforementioned cut-off dates to be extended for no longer than two months.

In the Agreement the parties also provided that the lawsuit would be dismissed by stipulation. Paragraph 6 states, in pertinent part, as follows:

> Hester will promptly dismiss with prejudice by stipulation of the parties without the entry of any judgment, injunction, or order for injunctive relief, Civil Action No. 89–CV–949 pending in the United States District Court for the Northern District of New York. However, such dismissal will be dependent on the terms of this Agreement being subjected to enforcement by specific performance by the United States District Court for the Northern District of New York. As a result, a copy of this Settlement Agreement will be filed with the Court along with the dismissal papers.

In accordance with the foregoing, the parties forwarded the fully executed Agreement to the district court to be filed with the dismissal papers. Although no judicial action was necessary for the stipulation to become effective, the district court entered a Stipulated Order of Dismissal. The district court's dismissal order, adhering to the terms of the settlement agreement, specifically disavowed the entry of any judgment. The order stated as follows:

> Pursuant to Rule 41 of the Federal Rules of Civil Procedure and in accordance with the terms of the attached Settlement Agreement between the parties, this action is hereby dismissed with prejudice, including all claims or causes of action asserted herein. Further, pursuant to the agreement of the parties in settlement, no judgment against either party will be entered and all parties will bear their own costs and attorneys' fees.

The dismissal order bears the notation "Stipulated To" followed by the signature of the

---

1. The complaint also named the Golub Corporation, doing business as Price Chopper Supermar-

*kets, as a defendant.*

parties' attorneys and the notation "So Ordered" followed by the signature of Chief Judge McAvoy. The judge made no notation on the settlement agreement, which was attached to the dismissal order.

After the deadlines set forth in the Agreement had passed, Hester learned of an advertisement for the sale of Tyson's five pound bags of WING FLINGS in the March 10, 1993 edition of the *Washington Post.* Hester then sent a letter to Tyson dated March 17, 1993, requesting that Tyson cease using the WING FLINGS mark and provide an accounting of all sales of products bearing that mark after September 1, 1992. In a response letter dated March 19, 1993, Tyson's attorney denied any wrongdoing on the part of Tyson and added that Tyson would not provide an accounting because it "ha[d] better things to do with its time."

On March 25, 1993, Hester commenced the present action, claiming that Tyson had breached the settlement agreement by continuing to use the WING FLINGS mark after the applicable cut-off dates. In addition to its contract claim, Hester claimed that Tyson had violated (1) the district court's dismissal order; (2) the terms of New York Business Law § 368–d and other state trademark dilution statutes; and (3) the trademark infringement and unfair competition provisions of 15 U.S.C. § 1114(1). On March 14, 1994, Hester amended its complaint primarily to include a tortious interference with contract claim. Hester sought, *inter alia,* a preliminary and permanent injunction against Tyson's continued offending use of the mark, treble damages, punitive damages, attorney's fees and any other relief deemed appropriate by the district court.

On June 17, 1994, Hester moved for partial summary judgment on its claims alleging breach of contract and violation of the dismissal order. In an oral ruling on August 8, 1994, the district court granted partial summary judgment for Hester, having found that defendant had breached the settlement agreement based on its admitted offending use of the mark on its packaging and invoices. *See Hester Indus. v. Tyson Foods, Inc.,* No. 93–CV–391, 1994 WL 774553, at *4– *5 (N.D.N.Y. Aug.8, 1994) (*"Hester I"*). Documents submitted to the district court by Tyson indicated, for example, that Tyson was out of compliance with the settlement agreement with respect to packaging at various times between January of 1992 and March of 1993, and between October of 1992 and October of 1993 with respect to invoices. *See id.* at *5. The court also found that the dismissal order incorporated the settlement agreement and therefore that a breach of the Agreement could serve as the basis for a finding that Tyson was in contempt of court. *See id.* at *3. Specifically, the court stated that "the wording of the [dismissal] order logically leads one to find that the terms of the settlement agreement were conditions approved by the [c]ourt through the dismissal order and, thus, were incorporated into the order." *Id.* Accordingly, the court concluded that the defendant was in contempt of court for violating the dismissal order. *See id.* at *5. The court entered an order confirming its oral ruling on August 15, 1994.

Tyson moved, *inter alia,* for reconsideration of the court's order granting plaintiff's motion for partial summary judgment. The court denied Tyson's motion on August 15, 1994, having found that there was nothing in its previous order that "present[ed] a clear error of law or an obvious injustice." *Hester Indus. v. Tyson Foods, Inc.,* No. 93–CV–0391, 1994 WL 774634, at *3 (N.D.N.Y. Aug.15, 1994) (*"Hester II"*).

On January 4, 1995, Hester again moved for (1) partial summary judgment on the issue of whether Tyson had breached the settlement agreement and violated the dismissal order from late in August of 1994 through mid-October of 1994; and (2) a preliminary injunction against Tyson's continued use of the WING FLINGS mark. By oral ruling on January 27, 1995, the court granted Hester's motion for partial summary judgment, having found that Tyson had further breached the settlement agreement and violated the dismissal order through offending use of the mark on its display boxes and freezer signs at various stores throughout the country between August and October of 1994. *See Hester Indus. v. Tyson Foods, Inc.,* No. 94–CV–391, 1995 WL 113939, at *1– 2 (N.D.N.Y. Jan.30, 1995) (*"Hester III"*). Accordingly, the court found Tyson to be in

contempt with regard to the boxes and signs. *See id.* at *3.

The court reserved decision on Hester's motion for injunctive relief and simultaneously rejected Tyson's motion for partial summary judgment, which was based on the theory that plaintiff's claims for trademark infringement, trademark dilution, unfair competition and tortious interference were precluded by res judicata and collateral estoppel. *See id.* at *3–4. However, the court found that it could not award attorney's fees to the prevailing party in a trademark dilution action, and therefore granted Tyson's motion for summary judgment on that issue. *See id.* at *7. On April 18, 1995, the district court denied plaintiff's motion for a preliminary injunction to prevent use of the mark pending outcome of the underlying suit because plaintiff had failed to make a sufficient showing of irreparable harm. *See Hester Indus. v. Tyson Foods, Inc.,* 882 F.Supp. 276, 277–78 (N.D.N.Y.1995) (*"Hester IV"*).

Having addressed the pre-trial motions in the case, the district court conducted a ten-day bench trial, and thereafter filed findings of fact and conclusions of law. In its opinion, the court determined that "the sole claim to be decided ... [wa]s whether or not, and to what extent, Tyson violated the Stipulated Order of Dismissal by continued use of the WING FLINGS mark after the deadline set forth therein." *Hester Indus. v. Tyson Foods, Inc.,* 985 F.Supp. 236, 239 (N.D.N.Y. 1997) (*"Hester V"*). The district court found that Tyson had used the WING FLINGS mark after the applicable cut-off dates in connection with (1) packaging and labels; (2) bills of lading; (3) sales orders; and (4) price lists. *See id.* at 239–42. According to the court, the total net sales dollars for all periods of Tyson's offending use of the mark totalled $30,831,958. *See id.* at 241. In fashioning a contempt finding based upon Tyson's net profits from the impermissible use of the mark, the court refused to include sales associated with the bills of lading, sales orders and invoices bearing the mark because these were internal documents and "played no discernable role in the generation of profits by Tyson." *Id.* at 245. The court also refused to count sales associated with the labels, primarily because many of the boxes bearing these labels had been rela-

beled before shipment and, in any event, there was insufficient evidence that Tyson had secured any profits based on these sales. *See id.* at 247–48.

The court determined that the appropriate monetary sanction would be disgorgement of Tyson's net profits from its sales relating to the offending use of the mark. The court found that these sales were in the amount of $9,732,054, *see id.* at 248, and were comprised of (1) $2,104,722 in sales of wings with packaging bearing the mark; plus (2) $8,542,422 in sales of wings to price club and retail customers where Tyson had provided such customers with price lists bearing the mark. To arrive at net profits, the court subtracted $1,132,781.16 in costs for production and processing. Therefore, the total contempt fine was $8,599,272.84 plus interest. *See id.* at 250.

The district court denied Hester's request for attorney's fees in relation to the contempt sanction, finding that Hester did not prove that Tyson "willfully sought to gain an economic benefit by using the WING FLINGS mark." *Id.* On August 11, 1997, the court entered judgment in favor of Hester. In a decision and order dated November 17, 1997, the district court denied Tyson's motion made pursuant to Fed.R.Civ.P. 59(e), to alter or amend the judgment, but granted Tyson's motion to stay execution of the judgment, provided that Tyson post a supersedeas bond in the amount of the judgment together with post-judgment interest. *See Hester Indus. v. Tyson Foods, Inc.,* 985 F.Supp. 83, 86 (N.D.N.Y.1997) (*"Hester VI"*). The bond was posted, and this appeal and cross-appeal followed.

## DISCUSSION

### I. Standard of Review

The district court's findings of fact are reviewed for clear error and its ultimate finding of contempt is reviewed for abuse of discretion. *See United States v. Local 1804–1, Int'l Longshoremen's Ass'n,* 44 F.3d 1091, 1095 (2d Cir.1995). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evi-

dence." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). We have held, however, that "because the power of a district court to impose contempt liability is carefully limited, our review of a contempt order for abuse of discretion is more rigorous than would be the case in other situations in which abuse-of-discretion review is conducted." *EEOC v. Local 638*, 81 F.3d 1162, 1171 (2d Cir.1996)(quotation omitted).

## II. Authority for Contempt Finding

■ Tyson contends that the district court lacked the authority to hold it in contempt of court for violating the district court's "Stipulated Order of Dismissal." We agree. Dismissal was effectuated by stipulation, or mutual agreement of the parties, and did not require any judicial action. Moreover, the Agreement prohibited the court from entering an injunction.

■ Contrary to Hester's claims that its trademark dilution action was dismissed pursuant to Fed.R.Civ.P. 41(a)(2) because it submitted a dismissal order to the district court for its "review, approval and signature," we believe that the underlying trademark dilution and infringement action between Tyson and Hester was dismissed in 1992 pursuant to Fed.R.Civ.P. 41(a)(1)(ii). Rule 41(a)(1) provides two means by which a plaintiff may voluntarily dismiss a federal court action without obtaining the consent of the district court. *See* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2363 (1995). The action may be dismissed (i) prior to the service of an answer or of a motion for summary judgment if the plaintiff files a notice of dismissal with the court; or (ii) at any time by stipulation of all parties. *See* Fed.R.Civ.P. 41(a)(1). "A dismissal by stipulation is . . . a mutual agreement by all the parties." *Poloron Prod., Inc. v. Lybrand Ross Bros. & Montgomery*, 534 F.2d 1012, 1017 (2d Cir.1976).

■ There is no basis for concluding that the dismissal order was made pursuant to Rule 41(a)(2), which addresses circumstances in which dismissal can only be accomplished by order of the court "and upon such terms and conditions as the court deems proper." Fed.R.Civ.P. 41(a)(2). Rule 41(a)(2) does not

apply to circumstances where plaintiff can secure consent to a stipulated dismissal. *See Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir.1990). Because all of the parties stipulated to dismissal in the underlying action, the dismissal of the case was pursuant to Rule 41(a)(1)(ii) and not by order of the district court. *See* 9 Wright & Miller, Federal Practice and Procedure § 2364 ("If an answer or a motion for summary judgment has been served, the plaintiff no longer has the right to dismiss and, unless all of the parties stipulate to dismissal, a plaintiff who wishes to dismiss must obtain an order of the district court.") (footnotes omitted). The judge's signature on the stipulation did not change the nature of the dismissal. Because the dismissal was effectuated by stipulation of the parties, the court lacked the authority to condition dismissal on compliance with the Agreement. *See Republic of Philippines v. Westinghouse Elec. Corp.*, 43 F.3d 65, 81 n. 21 (3d Cir.1994) ("[U]nder Fed.R.Civ.P. 41(a)(1)(ii), parties to a civil action may stipulate to a dismissal of an action at any time. A court has no authority to disapprove or place conditions on any such dismissal."); *In re Wolf*, 842 F.2d 464, 466 (D.C.Cir.1988) (per curiam) (" '[C]aselaw concerning stipulated dismissals under Rule 41(a)(1)(ii) is clear that the entry of such a stipulation of dismissal is effective automatically and does not require judicial approval.' ") (quoting *Gardiner v. A.H. Robins Co.*, 747 F.2d 1180, 1189 (8th Cir.1984)).

■ Further, the court lacked authority to impose compliance with the settlement agreement as a condition of dismissal because that kind of condition is tantamount to a mandatory injunction. Paragraph six of the Agreement states that there will be no "entry of any judgment, injunction, or order for injunctive relief" in connection with the dismissal. The "Stipulated Order of Dismissal" incorporated this requirement by stating that "pursuant to the agreement of the parties in the settlement, no judgment against either party will be entered. . . ." To construe the "Stipulated Order of Dismissal" as a court order prohibiting continued use of the WING FLINGS mark would require that we equate the dismissal order with an order requiring entry of an injunction. *See Inter-*

national Longshoremen's Ass'n v. Philadelphia Marine Trade Ass'n, 389 U.S. 64, 75, 88 S.Ct. 201, 19 L.Ed.2d 236 (1967) (ruling that an order compelling parties to comply with an agreement is a "mandatory injunction."). Therefore, we cannot conclude that the "Stipulated Order of Dismissal" in the instant case ordered Tyson to comply with the terms of the Agreement and that noncompliance with the Agreement therefore was a valid basis for a contempt finding.[2]

■ Even though the district court lacked a valid basis for a contempt finding, the court meticulously made findings of fact during the course of several hearings. These findings on ill-gotten gains damages may be applied to one or more of the remaining causes of action, such as breach of contract or Lanham Act claims, if the findings are germane to the particular cause upon which liability is predicated.

### III. Hester's Cross–Appeal

Hester argues on cross-appeal that the district court committed "ministerial error" by failing to include in its calculation approximately $11.6 million in sales of WING FLINGS involving offending use of the mark on retail price lists during the period of August 29, 1992 through April 1, 1993. This argument was apparently raised in a cross-motion to alter or amend the judgment in this case, pursuant to Rule 59(e), but was not addressed by the district court.

The district court found that Tyson's use of the mark on retail price lists lasted for approximately one month (July 26, 1992 through August 29, 1992). Hester argues primarily that, despite its assertion in its post-trial brief that Tyson's retail price lists were used for the entire period of July 1, 1992 through April 1, 1993, the district court inadvertently eliminated the period of September 1, 1992 through April 1, 1993 because Hester had suggested to the court that counting that time period would duplicate the portion of the award based on certain in-

voices and sales orders from the same period. The court appears to have eliminated this time period, although it did not base any portion of the award on the use of the mark on these invoices and sales orders over that period. Accordingly, on remand, we invite the court to revisit the time period during which Tyson was out of compliance should it determine to apply its findings on damages to one or more of the remaining causes of action.

### CONCLUSION

In sum, we hold that: (1) the plaintiff's original action was dismissed by stipulation of the parties pursuant to Fed.R.Civ.P. 41(a)(1)(ii); (2) the "Stipulated Order of Dismissal" could not properly serve as the basis for a contempt finding; and (3) the district court's findings of fact regarding damages may be used in connection with other claims, if applicable. The judgment of the district court is vacated to the extent it imposes a fine for civil contempt, and the case is remanded to the district court for further proceedings in accordance with the foregoing.

---

2. The Supreme Court has suggested, in *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), that a district court is authorized, with the consent of the parties, to retain jurisdiction to enforce a settlement agreement that serves as the basis for a stipulated dismissal pursuant to Rule 41(a)(1)(ii).

However, we conclude that the text of the dismissal order at issue here, which we have set forth above, did not clearly communicate an intention of the parties and of the district court that the parties' settlement agreement be incorporated into the order.