173 F.3d 481
 RED BALL INTERIOR DEMOLITION CORP. and John Palmadessa,
Plaintiffs-Counter-Defendants-Appellants,
William Dunnegan, Appellant,
v.
Daniel PALMADESSA, William Palmadessa, Supreme Recycling,
Inc., Donald Palmadessa and Fortune Interior
Dismantling Corp.,
Defendants-Counter-Claimants-Appellees,
110 Sand Company, Movant-Appellee.
 Nos. 98-7086(L), 98-7174(CON).
 United States Court of Appeals,
Second Circuit.
 Argued March 3, 1999.
Decided April 15, 1999.
 
 Neal Fellenbaum, Zegen & Fellenbaum, New York, New York, for Plaintiffs-Counter-Defendants-Appellants.
 William Dunnegan, New York, New York, pro se.
 S. Mac Gutman, Gutman & Gutman, Port Washington, New York, for Defendant-Counter-Claimant-Appellee Daniel Palmadessa.
 Richard A. Feldman, Feldman Grodeck, Roseland, New Jersey, for Defendants-Counter-Claimants-Appellees Donald Palmadessa, William Palmadessa, Supreme Recycling, Inc. and Fortune Interior Dismantling Corp.
 Paula J. Warmuth, Stim & Warmuth, P.C., Huntington, New York, for Movant-Appellee.
 Before: JACOBS, SOTOMAYOR, Circuit Judges, and SAND,* District JudgeBACKGROUND
 SOTOMAYOR, Circuit Judge:
 
 
 1
 Plaintiffs-appellants Red Ball Interior Demolition Corporation ("Red Ball" or the "Company") and John Palmadessa (collectively "plaintiffs") appeal from a final order of the United States District Court for the Southern District of New York (Sweet, J.) granting defendant-appellee Daniel Palmadessa's motion for a declaratory judgment that a fund created pursuant to a settlement agreement between the parties was available to discharge Red Ball's liabilities to its general creditors. The district court also denied a motion to intervene by appellant William Dunnegan, an attorney who claimed a charging lien against the settlement fund. We hold that the district court misconstrued the unambiguous terms of the settlement agreement, and we therefore reverse the district court's declaratory judgment. We dismiss Dunnegan's appeal as moot.
 
 A. The Settlement Agreement
 
 2
 This appeal grows out of a long and tortured history of litigation between two brothers, John and Daniel Palmadessa, former partners in Red Ball.[1] In settlement of a prior litigation between them, John purchased all of Daniel's shares in the Company, thus making him Red Ball's sole shareholder. Four days after the purchase, John and Red Ball filed a new action against Daniel, his two sons, Donald and William, and two corporations owned by these defendants, Fortune Interior Dismantling Corp. and Supreme Recycling, Inc. John and Red Ball asserted claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(b)-(d) (1984), and claims for common law fraud, breach of fiduciary duty, conversion, breach of contract and repayment for wrongfully appropriated goods and services. In a decision that is not contested here, the district court dismissed the federal and state common law fraud claims but let the remaining state law claims survive both summary judgment and dismissal. See Red Ball Interior Demolition Corp. v. Palmadessa, 874 F.Supp. 576, 585-91 (S.D.N.Y.1995). That action concluded on May 7, 1996 with a settlement agreement among John, Red Ball and Daniel (the "Settlement Agreement" or the "Agreement").
 
 
 3
 The central issue on this appeal is the construction of certain provisions of the Settlement Agreement. The parties agreed to settle their litigation on the eve of a jury trial after an off-the-record conference with the court. The parties then placed the terms of their Agreement on the record during morning and afternoon court sessions. At the morning session, Daniel's counsel, S. Mac Gutman, began by stating that "[t]his settlement settles, discontinues with prejudice and releases all claims and counterclaims, which are or may be asserted in these actions." Gutman explained, in addition, that the Agreement was intended solely for the benefit of the parties to the litigation, stating that "[t]here is [sic] no third-party beneficiary rights that we intend to create by this agreement."
 
 
 4
 In broad outline, the Agreement contained four provisions relevant to this action. First, Daniel agreed to "pay to John Palmadessa the sum of $1 million less the amount of promissory notes which Daniel Palmadessa [was] still holding that were given to him in June of 1994 when John Palmadessa purchased [Red Ball]" and less "$44,000 [that attorneys Dunnegan and Feldman were] holding in escrow in Dime Savings Bank." Second, John and Red Ball agreed to indemnify Daniel "for all claims and any claims arising from the business of Red Ball, ... any claims which have been asserted as of this date, and any claims which may be asserted that relate back to the period prior to June of 1994." Third, the parties crafted an "exception ... releasing each other with regard to any claims for indemnification" arising out of the "Secluded Acres matter," which concerned an administrative order issued by the New Jersey Department of Environmental Protection ("DEP") imposing certain remedial measures and penalties against Red Ball for illegally disposing waste materials at the Secluded Acres Farm in the Township of West Milford, New Jersey. Gutman explained, more specifically, that "Daniel Palmadessa, if he is found responsible for any part of the Secluded Acres matter, cannot seek indemnification from John or Red Ball; and John or Red Ball, if they should be found responsible, cannot seek indemnification from Dan." Finally, the Agreement provided that the payment from Daniel to John would be held by Attorney Dunnegan in escrow, for three years, with "interest on the fund ... accru[ing] to the benefit of Red Ball and John Palmadessa."
 
 
 5
 In the afternoon, the parties reconvened to finalize some of the "mechanical features" of the Settlement Agreement. This time, Richard A. Feldman, counsel to the defendants other than Daniel, spoke for the parties. He clarified that the settlement fund created with the money paid by Daniel to John would be "established in John Palmadessa's name" with John as "the beneficiary of the trust." Feldman further emphasized that "there are no intended third-party beneficiaries of that fund whatsoever." Feldman also explained that "[t]he trust fund will be accessed only for Red Ball ... liabilities where Daniel Palmadessa has possible joint or co-existent personal liability." As for the manner in which the fund would be accessed, the parties agreed that Daniel would be responsible for presenting his claims. Upon presentation of certain specified priority claims, Daniel would be given immediate access to the fund. In all other cases, John would "react in accordance with the indemnity agreement, and there are procedures spelled out that we don't need to repeat here."[2]
 
 B. The Case Below
 
 6
 The May 7, 1996 hearing was not the end of the Palmadessas' litigation. On October 21, 1997, Daniel filed a motion with the district court for a declaratory judgment that the settlement fund was an asset of Red Ball and that it was available to discharge claims brought against Red Ball by DEP in connection with Secluded Acres. On November 11, 1997, attorney Dunnegan, who had since terminated his representation of John and Red Ball, moved to intervene and to fix an attorney's lien on the settlement funds that he was still holding in escrow. On January 13, 1998, the district court issued two brief handwritten orders, the first granting Daniel's motion and the second rejecting Dunnegan's.
 
 
 7
 In its order granting Daniel's motion, the district court held simply that "[t]he settlement fund at issue was established to protect against any liability of Red Ball Interior Demolition Corp. established during the relevant [sic]. In the event such liability is established, the fund is available." On appeal, John and Red Ball argue that the district court erred in concluding that the settlement fund was "available" to "protect against any liability of Red Ball." They contend that the fund instead belongs solely to John and was created only to indemnify Daniel for his personal liabilities relating to the obligations of Red Ball. John and Red Ball maintain, moreover, that the Agreement specifically provided that Daniel was not entitled to be indemnified in connection with his potential liability in the Secluded Acres matter.
 
 
 8
 The district court denied Dunnegan's motion, concluding that "Dunnegan as attorney is entitled to a charging lien in the event that the settlement fund after discharging any liabilities of Red Ball Interior Demolition has funds payable to either John Palmadessa or the corporation. At such time an affirmative application can be made." On appeal, Dunnegan contends that New York law requires recognition of an attorney's lien from the commencement of an action and that the district court therefore erred in concluding that his lien was contingent on whether funds remained after Red Ball discharged its other debts. In addition, Dunnegan argues that by denying his lien while holding that the settlement fund was available to discharge all of Red Ball's liabilities, the district court effectively gave Red Ball's general creditors an improper priority over his claim against the fund.
 
 DISCUSSION
 A. Claims Against the Settlement Fund
 
 9
 Settlement agreements are contracts and must therefore be construed according to general principles of contract law. See Goldman v. Commissioner, 39 F.3d 402, 405 (2d Cir.1994); Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir.1994). Under these principles, a district court's interpretation of an ambiguity is reviewed under a clearly erroneous standard. See Tourangeau v. Uniroyal, Inc., 101 F.3d 300, 306 (2d Cir.1996) (citing U.S. Naval Inst. v. Charter Communications, Inc., 875 F.2d 1044, 1049 (2d Cir.1989)). A lower court's threshold determination as to whether a contract is ambiguous, however, is subject to de novo review. See id. (citing Seiden Assocs. v. ANC Holdings, Inc., 959 F.2d 425, 429 (2d Cir.1992)). Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by "urg[ing] different interpretations in the litigation." Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889 (2d Cir.1990) (citing Hunt Ltd. v. Lifschultz Fast Freight, Inc., 889 F.2d 1274, 1277 (2d Cir.1989)). If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself. See Huertas v. East River Housing Corp., 992 F.2d 1263, 1266 (2d Cir.1993); see also Tourangeau, 101 F.3d at 307.
 
 
 10
 We hold that appellants prevail in this action pursuant to the unambiguous terms of the Settlement Agreement. First, the parties designated John as the settlement fund's sole beneficiary. Attorney Feldman, representing several of the defendants in this action, specifically explained that "the trust fund ... is going to be established in John Palmadessa's name." Emphasizing the point even further, Feldman identified John as "the beneficiary of the trust" and declared that the fund had "no intended third-party beneficiaries ... whatsoever." In light of these representations, there is no reasonable basis to conclude that the fund was created as a general asset of the Company available to all of its creditors. In fact, the fund belongs to John and can be accessed "only for Red Ball Interior Demolition liabilities where Daniel Palmadessa has possible joint or co-existent personal liability." Moreover, Daniel's access to the fund is subject to an important express restriction. As explained by Daniel's own attorney, Gutman, the Settlement Agreement includes an "exception ... with regard to Secluded Acres," pursuant to which "Daniel Palmadessa and John Palmadessa and Red Ball are releasing each other with regard to any claims for indemnification."
 
 
 11
 Defendants try to undermine these plain statements on the record by arguing that the settlement fund is somehow separate from and unrelated to the indemnity agreement. On this dubious basis, defendants maintain that the Secluded Acres exclusion applies only to the indemnity agreement and that the settlement fund therefore remains available to cover the Secluded Acres liability. It was the plain understanding of the parties, however, that the settlement fund would serve to discharge Daniel's liabilities only as specified by the terms of the indemnity agreement. Indeed, in keeping with this express understanding, Feldman himself elaborated during the afternoon session before the district court that access to the settlement fund was to be administered "in accordance with the indemnity agreement." Such statements demonstrate that defendants' effort to divorce the settlement fund from the indemnity agreement represents little more than a post hoc attempt to redefine the terms of the Settlement Agreement and thereby to create ambiguity where none exists.[3]
 
 
 12
 In sum, we detect nothing in the terms of the Settlement Agreement to support the district court's finding that the fund "was established to protect against any liability of Red Ball." Rather, according to the parties' repeated clear statements, John was the sole beneficiary of the fund, and that fund was available only to indemnify Daniel for Red Ball liabilities for which Daniel was possibly jointly or "co-existently" liable. Moreover, the Settlement Agreement included an express exception pursuant to which the fund would not be available to indemnify Daniel in connection with Secluded Acres. For these reasons, we reverse the judgment of the district court.[4]
 
 B. Dunnegan's Motion to Intervene
 
 13
 After Daniel filed his motion for declaratory judgment in the district court, William Dunnegan, John's former attorney, filed a motion to intervene under Fed.R.Civ.P. 24 requesting an order that the court fix and enforce an attorney's lien in his favor on the settlement fund. He asserted these rights pursuant to Section 475 of the New York Judiciary Law, which provides that attorneys have liens upon any proceeds that they win on behalf of their clients, and that these liens "cannot be affected by any settlement between the parties." N.Y. Judiciary Law § 475 (McKinney 1983). Dunnegan had represented John and Red Ball on a contingency fee basis and expected to be paid out of the settlement fund he helped to create. He sought to intervene out of a concern that the district court might diminish his interest in the fund by granting Daniel's motion for declaratory judgment and treating the fund as a general asset of Red Ball available to cover any of the Company's liabilities, including those relating to Secluded Acres.[5]
 
 
 14
 At oral argument before this Court, Dunnegan allowed that any proper claim presented by Daniel would have priority over his interest in the fund, and he further acknowledged that his interest as an intervener would be moot if this Court were to find that the settlement fund is not available to pay Red Ball's general creditors or to indemnify Daniel in connection with the Secluded Acres matter. Because that is our holding, we dismiss as moot Dunnegan's appeal from the district court's denial of his motion to intervene.[6]
 
 CONCLUSION
 
 15
 For the reasons set forth above, we reverse the district court's order granting declaratory judgment in Daniel's favor and dismiss Dunnegan's appeal as moot.
 
 
 
 *
 The Honorable Leonard B. Sand, District Judge of the United States District Court for the Southern District of New York, sitting by designation
 
 
 [1]
 This opinion is only the latest in a long line of decisions that courts in this Circuit have rendered in connection with the personal acrimony between the Palmadessa brothers. See, e.g., Red Ball Interior Demolition Corp. v. Palmadessa, No. 96-7896, 1997 WL 68251 (2d Cir. Feb.3, 1997); Red Ball Interior Demolition Corp. v. Palmadessa, 947 F.Supp. 116 (S.D.N.Y.1996); Red Ball Interior Demolition Corp. v. Palmadessa, No. 94 Civ. 4158, 1996 WL 159066 (S.D.N.Y. Apr.5, 1996); Red Ball Interior Demolition Corp. v. Palmadessa, 908 F.Supp. 1226 (S.D.N.Y.1995); Red Ball Interior Demolition Corp. v. Palmadessa, 874 F.Supp. 576 (S.D.N.Y.1995); Palmadessa v. Palmadessa, No. 90 Civ. 2429, 1994 WL 191933 (S.D.N.Y. May 13, 1994); Palmadessa v. Palmadessa, No. 90 Civ. 2429, 1992 WL 188329 (S.D.N.Y. July 30, 1992)
 
 
 [2]
 The parties entered into the specified indemnity agreement on June 2, 1994, and have not included a copy of that agreement in the record on appeal
 
 
 [3]
 Daniel also attempts to persuade this Court that it has previously ruled, in a summary order, that the Settlement Agreement vests Red Ball with an interest in the fund. See Red Ball Interior Demolition Corp. v. Palmadessa, No. 96-7896, 1997 WL 68251 (2d Cir. Feb.3, 1997). Daniel distorts this Court's previous ruling. In the prior appeal, we were asked to review the district court's ruling that the defendants did not breach the Settlement Agreement by paying the subject funds with a check made payable to Dunnegan as attorney for both John and Red Ball. We held that:
 Given the parties' stated agreement that the interest earned on the fund to be established by Dunnegan with the check delivered by Daniel Palmadessa was to "accrue to the benefit of Red Ball and John Palmadessa," and that the "fund will be accessed" for certain stated "Red Ball Interior Demolition liabilities," we see no error in the district court's ruling that defendants did not breach the agreement by delivering a check payable to Dunnegan as attorney for both John Palmadessa and Red Ball.
 Id.at * 2. In this statement, we acknowledged that interest earned by the settlement fund was to accrue to the benefit of both John and Red Ball. Contrary to Daniel's assertion, we did not conclude that Red Ball had any right to the capital of the fund, except insofar as we noted that "the 'fund will be accessed' for certain stated 'Red Ball Interior Demolition liabilities.' " Id. (emphasis added).
 
 
 [4]
 At oral argument, intervenor 110 Sand Co. asserted that in the event the settlement fund is unavailable to Red Ball's general creditors, the creation of the fund constitutes a fraudulent conveyance under New York law. The parties have not presented this as a basis for their appeal, however, and we therefore take no position as to the legality of the Settlement Agreement under state law
 
 
 [5]
 After Dunnegan filed his motion, 110 Sand Co., a judgment creditor of Red Ball, filed its own motion to intervene under Fed.R.Civ.P. 24 seeking to have Dunnegan removed as escrow agent of the settlement fund. In a third written order of January 13, 1998, the district court stated:
 This motion seeks to alter the terms of the settlement agreement with respect to the escrow agreement, the only basis for this court's jurisdiction. 110 Sand Co., if an appropriate judgment creditor of Red Ball Interior Demolition Corp. is entitled to enforce its judgment in accordance with the settlement agreement against the fund. The motion to remove Dunnegan is denied. The motion to intervene to compel payments and to enforce the agreement is granted.
 No party has appealed from this order, perhaps because, as we were informed at oral argument, the district court directed 110 Sand Co. to file its claim in state court. As this opinion makes clear, however, 110 Sand Co. is not entitled to enforce its judgment against the settlement fund. Rather, the fund is available to pay 110 Sand Co.'s judgment only if Daniel has possible joint or "co-existent" liability. Moreover, assuming that Daniel is jointly liable to 110 Sand Co., the fund is to be accessed when "Daniel ... presents a claim, which he believes is to be covered by the fund within its intention." Thus, only Daniel, and not 110 Sand Co., has a right to present a claim against the fund.
 
 
 [6]
 We trust that if Dunnegan's remainder interest in the settlement fund is somehow threatened in the future, the district court will permit him to resubmit his motion to intervene and will evaluate that motion according to the standards set forth by Fed.R.Civ.P. 24