356 F.3d 238
 Ramon TORRES, Plaintiff-Appellant,
v.
Hans WALKER, Superintendent; Rual Ricci, Corrections Officer; E. Dann, Deputy Superintendent at Auburn Corr. Facility; Capt. Burns, Corrections Officer at Auburn Corr. Facility; Lt. Vasques, Corrections Officer at Auburn Corr. Facility; Lt. Chehovich, Hearing Officer at Auburn Corr. Facility; Sylvia Laguana, Acting Director of Inmates Grievance Program; Phillip Coombe, Jr., Acting Commissioner of NYS Dept. of Corrections; Brian Malone, Investigator General of the State of N.Y. Dept. of Corrections, Appellees,
Sgt. CROSS, Corrections Officer; Douglas Ricci, Correctional Officer, New York State Department of Correctional Services, Defendants-Appellees.
 Docket No. 03-102.
 United States Court of Appeals, Second Circuit.
 Argued: September 30, 2003.
 Decided: January 23, 2004.
 
 Appeal from the United States District Court for the Northern District of New York, Mordue, J.
 Martin A. Geer, William S. Boyd School of Law, University of Nevada — Las Vegas, Las Vegas, NV (Jennifer Sandoval, Law Student, William S. Boyd School of Law, University of Nevada — Las Vegas, on the brief), for Plaintiff-Appellant.
 Victor Paladino, Assistant Solicitor General of the State of New York, Albany, N.Y. (Eliot Spitzer, Attorney General of the State of New York, Caitlin J. Halligan, Solicitor General of the State of New York, Daniel Smirlock, Deputy Solicitor General, Nancy A. Spiegel, Senior Assistant Solicitor General, on the briefs), for Defendants-Appellees.
 Jonathan H. Levy, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Washington, DC (Peter D. Keisler, Assistant Attorney General, Barbara L. Herwig, Attorney, Appellate Staff, Civil Division, United States Department of Justice, Glenn T. Suddaby, United States Attorney for the Northern District of New York, on the brief), for Intervenor United States of America.
 Before: MINER, CALABRESI and STRAUB, Circuit Judges.
 MINER, Circuit Judge.
 
 
 1
 The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(d)(2), caps awards of attorneys' fees in prisoner civil rights actions that result in a "monetary judgment." In this appeal, we are asked to decide whether this statutory cap on attorneys' fees applies to a "so-ordered" stipulation entered in the United States District Court for the Northern District of New York (Mordue, J.), dismissing a prisoner's § 1983 action against two New York State corrections officers. The stipulation was entered pursuant to Fed.R.Civ.P. 41(a) and memorialized a private settlement agreement between the parties providing for, among other things, dismissal of the action with prejudice, payment of $1000 to plaintiff-appellant Ramon Torres, and the payment of Torres' reasonable attorneys' fees. The District Court held that the PLRA's fee cap was applicable to such a stipulation of dismissal and, accordingly, the court declined to award attorneys' fees in excess of the statutory cap. The District Court also upheld the constitutionality of the PLRA's fee cap after concluding that the cap was rationally related to legitimate governmental interests.
 
 
 2
 For the reasons set forth below, we conclude that the PLRA's fee cap does not apply to the "so-ordered" stipulation of dismissal entered in this case and, consequently, we need not reach the issue of whether the PLRA's fee caps are constitutional. Accordingly, we vacate the order of the District Court and remand the case for further proceedings consistent with this opinion.
 
 BACKGROUND
 
 3
 In October 1994, after exhausting his administrative remedies, Torres filed a pro se § 1983 complaint in the District Court against various New York State corrections officers and officials, alleging that the corrections officers at the Auburn Correctional Facility (where he was incarcerated) violated his federal constitutional rights by using excessive force against him. After filing his pro se complaint, Torres initially retained pro bono counsel from Prisoners' Legal Services of New York, which filed a Second Amended Complaint in January 1997. In his Second Amended Complaint, Torres alleged that, while being interrogated about a fire that was set at the prison, he was verbally threatened with racial epithets, punched in the face, choked, severely beaten until he lapsed into unconsciousness, and then dragged back to his cell.[1] Torres further alleged that he was subsequently treated at the prison hospital for a broken nose, two black eyes, and multiple contusions and lacerations. Torres sought $200,000 in compensatory damages and $100,000 in punitive damages, as well as attorneys' fees and costs.
 
 
 4
 In January 1999, the Public Interest Law Firm of Syracuse University's Law School was substituted as counsel. The parties thereafter engaged in significant discovery. At a January 2000 pretrial settlement conference, Torres submitted a settlement demand, to which Defendants never responded. A trial was initially scheduled to begin on December 4, 2000, but was postponed to February 5, 2001, at Defendants' request.
 
 
 5
 On January 22, 2001, two weeks before trial was scheduled to commence, Defendants served Torres with an Offer of Judgment, pursuant to Fed.R.Civ.P. 68, to settle the case for "$1,000 plus costs and reasonable attorneys' fees accrued to date." The cover letter accompanying Defendants' Rule 68 offer stated that: (i) "fees [were] a separate consideration from damages"; (ii) Defendants were "willing to compensate [Torres] for the reasonable costs and attorneys' fees expended to date"; and (iii) fees were not to be "calculated as a percentage of the total amount [of the settlement offer]." Two days later, Torres accepted the settlement offer in a notice that provided, in relevant part, that he "accept[ed] Defendant[s'] Offer ... and ask[ed] that the Clerk enter Judgment in accordance with the Offer." In February 2001, the parties entered into a "so-ordered" stipulation for an extension of time, in relation to a motion for fees and costs. That stipulation provided as follows: "In order to give the parties an opportunity to resolve and determine reasonable attorney's fees and costs without further expenditure of judicial resources, IT IS HEREBY STIPULATED by and between the parties that the deadline for filing Plaintiff's Motion for Attorney's Fees and Costs be extended to 45 days after entry of Judgment."
 
 
 6
 The parties were unsuccessful in their subsequent attempts to agree on reasonable attorneys' fees. Consequently, in March 2001, Torres moved "for an award of attorneys['] fees pursuant to the Settlement and Judgment entered on January 26, 2001 and 42 U.S.C. § 1988."[2] In his motion, Torres sought $66,429.25 in attorneys' fees. Defendants opposed Torres' fee request, arguing that the fee award was subject to the limitation in the PLRA, which capped the award of fees in prisoners' civil rights litigation at 150% of the money judgment entered in a plaintiff's favor. Defendants also argued that the amounts claimed by Torres were not reasonable. In reply, Torres argued that the accepted offer of judgment was governed by contract law principles and that, based on both the language of the settlement agreement and the conduct of the parties, the parties had not intended that the PLRA caps would apply. Torres argued in the alternative that, if the PLRA did apply, the statute was unconstitutional. Specifically, Torres claimed that the PLRA violated the Equal Protection Clause because the Act treated prisoner and non-prisoner civil rights plaintiffs differently without a rational basis for doing so.
 
 
 7
 As noted above, notwithstanding the references to a "judgment" in the parties' filings and correspondence, a separate judgment was never entered with respect to the parties' settlement. Instead, on May 23, 2001, while the attorneys' fee dispute was sub judice the parties' settlement agreement was memorialized, at Defendants' request, in a "so-ordered" Stipulation of Settlement and Order of Dismissal signed and entered by the District Court pursuant to Fed.R.Civ.P. 41(a). The stipulation provided, among other things, that: (i) Torres' complaint would be dismissed with prejudice; (ii) Defendants would pay Torres $1000 in full satisfaction of all claims for damages; (iii) Defendants would pay Torres' counsel "reasonable attorney's fees and costs to be determined by the [District] Court upon submission of the parties"; and (iv) Defendants would make no admission of any wrongdoing.
 
 
 8
 In a six-page, unpublished memorandum decision and order dated February 19, 2003, the District Court awarded Torres $1500 in attorneys' fees after determining that the 150% cap on fees set forth in the PLRA applied to a "so-ordered" stipulation of dismissal. In addition, the District Court, applying rational basis review, rejected Torres' argument that the PLRA cap was unconstitutional. This final order was entered on February 19, 2003, and this timely appeal followed.[3]
 
 
 9
 After this appeal was docketed, the Clerk of the Court, acting pursuant to 28 U.S.C. § 2403(a), filed a certification with the Attorney General of the United States indicating that the constitutionality of the PLRA was being challenged, and inviting the United States to intervene to defend the constitutionality of the statute. By motion dated September 15, 2003, the United States sought leave to intervene to defend the constitutionality of the PLRA.[4] In an order dated September 18, 2003, we granted the motion to intervene.
 
 DISCUSSION
 
 10
 I. Does the Fee Cap in the PLRA Apply to "So-Ordered" Stipulations of Dismissal?
 
 The PLRA provides, in relevant part:
 
 11
 (d) Attorney's fees
 
 
 12
 (1) In any action brought by a prisoner who is confined to any jail, prison, or other correctional facility, in which attorney's fees are authorized under [42 U.S.C. § 1988], such fees shall not be awarded, except to the extent that —
 
 
 13
 (A) the fee was directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute pursuant to which a fee may be awarded under [42 U.S.C. § 1988]; and
 
 
 14
 (B)(i) the amount of the fee is proportionately related to the court ordered relief for the violation; or
 
 
 15
 (ii) the fee was directly and reasonably incurred in enforcing the relief ordered for the violation.
 
 
 16
 (2) Whenever a monetary judgment is awarded in an action described in paragraph (1), a portion of the judgment (not to exceed 25 percent) shall be applied to satisfy the amount of attorney's fees awarded against the defendant. If the award of attorney's fees is not greater than 150 percent of the judgment, the excess shall be paid by the defendant.
 
 
 17
 (3) No award of attorney's fees in an action described in paragraph (1) shall be based on an hourly rate greater than 150 percent of the hourly rate established under section 3006A of title 18 [of the United States Code] for payment of court-appointed counsel.
 
 
 18
 (4) Nothing in this subsection shall prohibit a prisoner from entering into an agreement to pay an attorney's fee in an amount greater than the amount authorized under this subsection, if the fee is paid by the individual rather than by the defendant pursuant to [42 U.S.C. § 1988].
 
 
 19
 42 U.S.C. § 1997e(d) (emphasis added). Thus, the PLRA effectively caps a defendant's liability for attorneys' fees in a prisoner's § 1983 action at 150% of a money judgment.
 
 
 20
 The question of whether the attorneys' fee cap in the PLRA applies to a "so-ordered" stipulation of dismissal appears to be one of first impression.[5] "In interpreting a statute, we must first look to the language of the statute itself." Greenery Rehab. Group v. Hammon, 150 F.3d 226, 231 (2d Cir.1998). "If the statutory terms are unambiguous, our review generally ends[,] and the statute is construed according to the plain meaning of its words." Id. Here, an examination of both the text and the legislative history of the PLRA sheds little light on this question. The relevant statutory language simply refers to an action in which a "monetary judgment" is awarded and in which the attorneys' fees sought were "directly and reasonably incurred in proving an actual violation of the plaintiff's rights protected by a statute." The legislative history of the PLRA does not elaborate on this statutory language.
 
 
 21
 In this case, a judgment in compliance with Fed.R.Civ.P. 58 was not entered. The stipulation of dismissal was entered pursuant to Fed.R.Civ.P. 41(a)(1)(ii), and thus did not even require the approval of the District Court. Moreover, the stipulation expressly disclaimed any liability on Defendants' part for any violation of Torres' rights. Thus, it cannot be said that Torres' attorneys' fees were directly and reasonably incurred in proving an actual violation of his statutory rights. Accordingly, we see no reason to apply the PLRA fee caps to this action, in which a money judgment never was entered.
 
 
 22
 On appeal, Defendants argue that we should treat "so-ordered" stipulations like consent decrees. Essentially, Defendants argue that, even without the provision for reasonable attorneys' fees in the stipulation and but for the fee cap in the PLRA, Torres would have been entitled to such fees as a "prevailing party," pursuant to 42 U.S.C. § 1988. To this end, Defendants rely primarily on Supreme Court and Second Circuit case law that confers "prevailing party" status on civil rights plaintiffs in the absence of a judgment. A careful examination of the relevant precedents, however, reveals no support for Defendants' position.
 
 
 23
 In Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 380, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994), the Supreme Court held that a federal district court lacked ancillary jurisdiction to issue an order enforcing a private settlement agreement. In so holding, the Court opined that "[t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal — either by separate provision (such as a provision `retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Id. at 381, 114 S.Ct. 1673. In either event, the Court noted, "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." Id.
 
 
 24
 In Hester Industries, Inc. v. Tyson Foods, 160 F.3d 911, 916 (2d Cir.1998), we held that a violation of the terms of a "so-ordered" stipulation of dismissal could not serve as the basis of a finding of contempt by a district court. Specifically, we held that "[t]he judge's signature on the stipulation did not change the nature of the dismissal. Because the dismissal was effectuated by stipulation of the parties, the court lacked the authority to condition dismissal on compliance with the [parties' settlement agreement]." Id. at 916. And we distinguished the facts of Hester Industries from the Kokkonen exceptions set forth above, based on the fact that "the text of the dismissal order at issue [in Hester Industries] ... did not clearly communicate an intention of the parties and of the district court that the parties' settlement agreement be incorporated into the order." Id. at 917 n. 2.
 
 
 25
 In Geller v. Branic International Realty Corp., 212 F.3d 734, 737 (2d Cir.2000), we noted that "[w]e have often compared stipulated settlements to contracts, and we have consistently applied the law of contract to disputes concerning the construction and enforcement of settlements." We also observed, however, that "when a district court `so orders' a stipulated settlement, it does accept some obligations," such as enforcement of the provisions of a settlement "that are not within the power of the litigants to perform, but rather lie within the power of the district court ordering the settlement." Id. In Geller, we held that one such obligation was to ensure that the confidentiality provisions of a settlement agreement are honored. In particular, we concluded that when a stipulation required that the entire case file be sealed, "a district court should carefully scrutinize the terms of [the] stipulated confidentiality order before endorsing it" and that a district court must subsequently enforce such a stipulation once it was endorsed by the court. Id. at 737-38.
 
 
 26
 In Buckhannon Board & Care Home v. West Virginia Department of Health & Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), the Supreme Court once again had occasion to examine the nature of the relationship between judgments and "so-ordered stipulations" — there, in the context of whether someone was a "prevailing party" and thus entitled to attorneys' fees under 42 U.S.C. § 1988. According to the Court, to be a prevailing party, there must be a "judicially sanctioned change in the legal relationship of the parties" that bears the "necessary judicial imprimatur." 532 U.S. at 605, 121 S.Ct. 1835. Two examples provided by the Court of such relief were judgments on the merits and settlement agreements that are enforced through court-ordered consent decrees. Id. at 603-04, 121 S.Ct. 1835. Notably, the Court observed, "[p]rivate settlements do not entail the judicial approval and oversight involved in consent decrees." Id. at 604 n. 7, 121 S.Ct. 1835 (citing Kokkonen).
 
 
 27
 More recently, in Roberson v. Giuliani, 346 F.3d 75, 81 (2d Cir.2003), we "join[ed] the majority of courts ... in concluding that judicial action other than a judgment on the merits or a consent decree can support an award of [the prevailing party's] attorney[s'] fees, so long as such action carries with it sufficient judicial imprimatur." In Roberson, we held that the district court's express retention of jurisdiction over the enforcement of the parties' settlement agreement constituted such action. Id. at 82. As we explained, "in the light of Kokkonen, the district court's retention of jurisdiction in [such a] case is not significantly different from a consent decree and entails a level of judicial sanction sufficient to support an award of attorney[s'] fees." Id. Indeed, it was on this basis that we distinguished our decision in Hester Industries, where the stipulation did not provide for the retention of jurisdiction of the district court to effectuate enforcement of the settlement. Id. at 83 n. 9.
 
 
 28
 Applying the principles articulated in the above cases, we conclude that the "so-ordered" stipulation of dismissal in this case does not carry with it a "sufficient judicial imprimatur" to warrant treatment as a monetary judgment for the purposes of the PLRA. Like the stipulation in Hester Industries — and unlike the stipulation in Roberson — the stipulation here did not contain a provision expressly retaining jurisdiction to monitor compliance with the terms of the parties' settlement.[6] Indeed, unlike the stipulation in Geller, (i) the stipulation here contained no obligations of the court that were beyond the power of the parties to perform and that could be enforced only by the District Court, and (ii) there is nothing in the record indicating that the District Court carefully reviewed the terms of the stipulation — or, for that matter, reviewed it at all — before "so ordering" it. Consequently, the stipulation in the case at bar is analogous to the private settlement agreements referenced in Buckhannon that "do not entail the judicial approval and oversight involved in consent decrees." 532 U.S. at 604 n. 7, 121 S.Ct. 1835.
 
 
 29
 Moreover, were we to accept Defendants' argument that this stipulation should be treated as a judgment, the consequences flowing therefrom would stand Buckhannon on its head. For example, taking Defendants' argument to its logical conclusion, a nonprisoner civil rights plaintiff would be entitled to attorneys' fees as a prevailing party if he obtained a "so-ordered" stipulation of dismissal like the one before us, even if the stipulation did not provide for the payment of the plaintiff's attorneys' fees. Such a result would fly in the face of Buckhannon's requirement that there be a "judicially sanctioned change in the legal relationship of the parties." Id. at 605, 121 S.Ct. 1835. Accordingly, we conclude that the fee cap in the PLRA does not apply to the "so-ordered" stipulation of dismissal entered by the District Court in this case.
 
 
 30
 II. Does the Stipulation of Dismissal in This Case Provide for Application of the PLRA Fee Cap?
 
 
 31
 The stipulation of dismissal provided that Defendants would pay to Torres' counsel his "reasonable attorney's fees and costs to be determined by the Court upon the submission of the parties." On appeal, Defendants argue that this language incorporated by reference the PLRA fee cap because, by the time the stipulation had been entered, their position with respect to the applicability of the PLRA had been had made clear in their opposition to Torres' motion for attorneys' fees. This argument need not detain us long, for both the plain language and the negotiating history of the stipulation prove this argument to be specious.
 
 
 32
 "Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir.1999). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." Id. "Moreover, a party cannot create an ambiguity in an otherwise plain agreement merely by urg[ing] different interpretations in the litigation." Id. (internal quotation marks omitted). Here, the language of the stipulation plainly and unambiguously provided for the payment of Torres' reasonable attorneys' fees, to be determined by the District Court. See generally Bethlehem Steel Co. v. Turner Constr. Co., 2 N.Y.2d 456, 459, 161 N.Y.S.2d 90, 141 N.E.2d 590 (1957) (a court should not "strain[ ] contract language beyond its reasonable and ordinary meaning"). In any event, even assuming the language in the stipulation regarding payment of reasonable attorneys' fees to be ambiguous, any ambiguity therein must be construed against Defendants, who drafted the stipulation. See SOS Oil Corp. v. Norstar Bank of Long Island, 76 N.Y.2d 561, 568, 561 N.Y.S.2d 887, 563 N.E.2d 258 (1990).
 
 
 33
 Finally, to whatever extent the relevant language is unclear, the extrinsic evidence in the record concerning the negotiating history of the stipulation undercuts Defendants' argument. See British Int'l Ins. Co. v. Seguros La Republica, S.A., 342 F.3d 78, 82 (2d Cir.2003); cf. World Trade Ctr. Props., L.L.C. v. Hartford Fire Ins. Co., 345 F.3d 154, 184-85 (2d Cir. 2003). As noted above, the cover letter accompanying Defendants' Rule 68 Offer of Judgment stated that they were "willing to compensate [Torres] for the reasonable costs and attorneys' fees expended to date, and fees are not calculated as a percentage of the total amount [of the settlement offer]." (emphasis added) Accordingly, the stipulation of dismissal provided for the payment of Torres' reasonable attorneys' fees without limitation by the PLRA.
 
 CONCLUSION
 
 34
 For the foregoing reasons, the order of the District Court is vacated and the case is remanded for further proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 While Torres' original complaint named several New York State Department of Corrections officers and officials as defendants, his Second Amended Complaint named only corrections officers Eugene Cross and Douglas Ricci as defendants
 
 
 [2]
 Torres' reference to "the Settlement and Judgement entered on January 26, 2001" is apparently a reference to his January 24, 2001 "Notice of Acceptance of Offer of Judgement," which was entered in the District Court's docket on January 26. As discussed below, no actual judgment was ever entered
 
 
 [3]
 Appellate jurisdiction lies in this case under the "collateral order" doctrine articulated by the Supreme Court inCohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). See McGill v. Sec'y of Health & Human Servs., 712 F.2d 28, 29-30 (2d Cir.1983) (award of attorneys' fees falls under "collateral order" doctrine). We note with displeasure the fact that the notice of appeal was not included in the Joint Appendix, as required by 2d Cir. R. 30(d).
 
 
 [4]
 In both its merits brief and at oral argument, the United States declined to take a position on the other issues raised in this appeal
 
 
 [5]
 InCarbonell v. Acrish, 154 F.Supp.2d 552 (S.D.N.Y.2001), Magistrate Judge Peck applied the PLRA fee cap to a fee request made after the entry of a stipulation of dismissal. But there, the plaintiff never asked the court to decide whether "so-ordered" stipulations were covered by the PLRA. The issue was thus assumed without being decided. The only issues decided by the court were whether the PLRA fee cap was constitutional and whether the cap applied in cases where both monetary and nonmonetary (i.e., equitable) relief was sought. The court answered both of these questions in the affirmative. Id. at 560-67.
 
 
 [6]
 Defendants make much of the fact that, inHester Industries, the stipulation of dismissal and the parties' settlement agreement were separate documents, and read Hester Industries and Kokkonen as considering it sufficient to confer jurisdiction on a district court to enforce a settlement if the dismissal order incorporated the settlement agreement into the order. While the stipulation and settlement agreement in Hester Industries were separate documents, we did not find that fact to be outcome determinative, but to be just one of several factors relevant to determining whether it was "clearly" the "intention of the parties and of the district court that the parties' settlement agreement [was to] be incorporated into the order." Hester Indus., 160 F.3d at 917 n. 2. Moreover, while the Supreme Court's dicta in Kokkonen made reference to a district court's "incorporating the terms of [a] settlement agreement in the [district court's] order," 511 U.S. at 381, 114 S.Ct. 1673, the Court's restrictive language in Buckhannon requires not only the physical incorporation of the settlement in a district court's order but also some evidence that a district court intended to place its "judicial imprimatur" on the settlement. 532 U.S. at 605, 121 S.Ct. 1835 (emphasis removed).