Dariusz Wojciech MAZURKIEWICZ,
Plaintiff,

v.

NEW YORK CITY HEALTH AND
HOSPITALS CORPORATION,
et al., Defendants.

No. 08–CV–01567.

United States District Court,
S.D. New York.

Oct. 30, 2008.

Kami Zumbach Barker, Donna Anne Canfield, NYC Law Dept., Office of Corp. Counsel, New York City, for Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

McMAHON, District Judge.

Plaintiff Dariusz Wojciech Mazurkiewicz ("Mazurkiewicz") alleges that defendants New York City Health and Hospitals Corporation, Bellevue Hospital Center, Diana K. Santos, Virginia Aldrich, and Naimah Cassandra Simmons (collectively, the "defendants") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. (as amended), Title VI, 42 U.S.C. § 2000(d), 42 U.S.C. §§ 1981, 1985, 1986, and 1988, New York State's Human Rights Law, Executive Law § 296, New York City Administrative Code § 8–101, and an implied contract. Specifically, plaintiff alleges defendants discriminated against him on the basis of his national origin, religion and gender when New York City Health and Hospitals Corporation ("HHC") terminated his employment on February 18, 2005. Defendants have moved pursuant to Fed.R.Civ.P. 12(c) for judgment on the pleadings. The motion is granted, and the Complaint is dismissed.

### BACKGROUND

The following well-pleaded facts are presumed true.

### a. Parties and termination of plaintiff

Plaintiff Mazurkiewicz is a male of Polish origin.

Defendant New York City Health & Hospitals Corporation operates hospitals in New York City, including Bellevue Hospital Center. Defendant Bellevue Hospital Center ("Bellevue") is a medical center located at 462 First Avenue.

Defendant Virginia Aldrich is an employee of HHC/Bellevue who served as senior associate director during the time period at issue.

Defendant Diana K. Santos is an employee of HHC/Bellevue who served as an associate director during the time period at issue.

Naimah Cassandra Simmons is an employee at HHC/Bellevue who served as a patient accounts manager during the time period at issue.

In 1999, Mazurkiewicz was hired by defendant HHC to work at Bellevue as a Hospital Care Investigator in the In–Patient Revenue Investigations Department. *See* Complaint at ¶ 18. On or about June 21, 2004, plaintiff represented to a psychiatric patient at Bellevue and his family that plaintiff, on behalf of Bellevue, would escort the patient (who was suffering from schizophrenia) to the patient's and plaintiff's home country of Poland. *See* Cplt. at ¶ ¶ 58, 61–62 and Exhibits S and T. Plaintiff had no authority to make any such representations, nor to escort a mentally ill patient on an international flight to Poland. Nevertheless, plaintiff informed the patient's family and the Polish national government that he would escort this patient. *See* Cplt. Exhibits S and T.

On or about July 21, 2004, HHC served plaintiff with a Notice and Statement of Charges, charging him with, *inter alia,* false representation and inappropriate conduct, related to this incident. *See* Cplt. at ¶ 62 and Exhibit S. Disciplinary hearings were held in or about August and November 2004. *Id.* ¶ 63. On or about October 14, 2004, plaintiff received a Step I Conference Decision recommending that plaintiff

be terminated. *Id.* ¶ 74. On November 16, 2004, a Step II Hearing was held. *Id.* ¶ 77. The Step II Review officer found plaintiff guilty of conduct unbecoming a hospital employee and recommended termination. *Id.* ¶ 78. In a letter dated February 18, 2005, the plaintiff was notified that he was terminated pursuant to the Step II Review. *Id.; see also* Cplt. Exhibit A. Following his termination, the claimant had worked as a per diem caseworker for a mental health social services agency for about two months. *See* Cplt. Exhibit P at 2.

Following his termination, plaintiff requested a Step III proceeding, which is a review of the Step II findings. Cplt. ¶ 80. In a decision filed on July 26, 2005, the Administrative Law Judge in that proceeding held that plaintiff had not behaved inappropriately and recommended reinstatement. *See id.;* Cplt. Exhibit P. The Administrative Law Judge wrote that "it has not been substantiated that the claimant had behaved dishonestly or inappropriately with respect to his application to escort a Polish-speaking psychiatric patient of the employer back to his home country.... I therefore find it has not been substantiated that the claimant had committed any act that would have justified his dismissal under a hospital standard prohibiting unbecoming conduct." *See* Cplt. Exhibit P at 2.

**b. Settlement**

After the Administrative Law Judge overruled the Step II review officer, the parties were assigned the Step IV proceeding of arbitration. No arbitration ever took place. Instead, 29 months later, the parties settled the matter. The complaint and answer do not specify why there was a 29–month gap between the ALJ's decision and the settlement, so technically that information is not before the court on

this Rule 12(c) motion. However, plaintiff attaches documents to his responsive papers on the motion that enlighten the court about the reasons: the arbitration was not scheduled for nearly a year and was then repeatedly adjourned. *See* Pl. Response Exhibit F. At some point the parties began discussing settlement.[1]

On or about May 31, 2007, the plaintiff received a draft Settlement Agreement. In that document, the "FOURTH" paragraph required HHC to "pay the Grievant full back pay ... from February 18, 2005, *through the date of his reinstatement. . . . "* *See* Cplt. Exhibits B and C. (Emphasis added.)

The May 31, 2007 draft was not executed. The plaintiff contends that a negotiating delay between his lawyer and his union's lawyer prevented him from signing the May 31, 2007, draft of the settlement, and states that he "was not instructed that the stipulation shall be signed in one month since its preparation." *See* Cplt. Exhibit C. Ultimately, the reason is unimportant, since plaintiff does not allege that HHC interfered with his ability to sign the document.

A subsequent draft was sent at some later date. *See* Defs. Reply Exhibit A. In that draft, the phrase "date of his reinstatement" in the "FOURTH" paragraph was crossed out and replaced in writing by the words "June 30, 2007." *See* Answer Exhibit A. The alteration meant that HHC would only reimburse back pay through June 30, 2007, even though plaintiff did not return to work that day. This alteration remained in the settlement agreement that was signed by plaintiff. *See* Answer Exhibit A.

On October 31, 2007, the plaintiff's union wrote Mazurkiewicz a letter, stating that plaintiff had received the proposed settlement on May 31, 2007, and that "because you had not signed the proposed stipulation in the last five (5) months, you will only get paid retroactive from February 18, 2005, through June 30, 2007." *See* Cplt. Exhibit B.

Plaintiff did not immediately sign this draft. Instead, he protested the loss of the four months' back pay. In a November 1, 2007, letter he wrote to the director and council representative of his union, plaintiff called it a "horrible trick" and said that it was "strongly unacceptable" that he be "robb[ed]" of his full back pay. *See* Cplt. Exhibit C.

Eventually, however, the plaintiff signed the document as modified. He placed his signature on every page—including the page stating that he would only receive back pay through June 30, 2007. *See* Answer Exhibit A. On December 27, 2007, HHC countersigned and executed the settlement agreement. *Id.*

In the settlement agreement, plaintiff and the Union agreed jointly and severally to release HHC and Bellevue from "any and all claims ... arising with the underlying dispute," which was plaintiff's termination of February 18, 2005. *See* Answer Exhibit A, There does not appear to be any dispute that plaintiff received $62,778.18 in back pay. *See* Defs. Reply Exhibit D.

### c. Claims

On February 14, 2008, plaintiff commenced this action pro se, alleging viola-

---

**1.** On April 4, 2007, the plaintiff received a letter from his counsel confirming that the arbitration session scheduled for March 27, 2007, was cancelled "based upon the written and verbal statements made by the HHC that they have decided to withdraw the disciplinary charges against you, and reinstate you to your former position of employment with full back pay, benefits and seniority. As you know from our prior conversations, I am in the process of working out the details of the foregoing." *See* Pl. Response Exhibit F.

tions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) et seq. (as amended), Title VI, 42 U.S.C. § 2000(d), 42 U.S.C. §§ 1981, 1985, 1986, and 1988, New York State's Human Rights Law, Executive Law § 296, New York City Administrative Code § 8–101, and an implied contract.

Plaintiff alleges that defendants (i) discriminated against him on the basis of race, color, national origin, religion and gender in violation of 42 U.S.C. § 1981, by, among other things, posting negative personal comments on the company database, removing clients from his caseload, hampering his career opportunities within the company, failing to transfer or promote him and fabricating claims of sub-standard work; (ii) discriminated against him on account of his age, race, religion, and national origin in violation of New York State Executive Law 296 by engaging in these same practices; (iii) discriminated against him on account of his age, race, religion, and national origin in violation of 42 U.S.C. § 2000e (Title VII) by engaging in these same practices; (iv) discriminated against him on account of his age, race, religion, and national origin in violation of 42 U.S.C. § 1986 by engaging in these same practices; (v) discriminated against him on account of his age, race, religion, and national origin in violation of New York City Administrative Code § 8–107(1) by engaging in these same practices; (vi) breached an implied contract by unlawfully discriminating against plaintiff and terminating plaintiff in bad faith; (vii) forced plaintiff to work in a hostile work environment by emotionally abusing and intimidating him. *See* Compl.

On April 30, 2007, the United States Equal Employment Opportunity Commission ("EEOC") had previously dismissed plaintiff's charge of discrimination against HHC and Bellevue for its untimely filing. *See* Pl. Response Exhibit E. The exact date that plaintiff filed with the EEOC is not in the record. There is evidence in the record that plaintiff's attorney notified him of a potential claim through EEOC on May 30, 2006. *See* Pl. Response Exhibit D.

On May 20, 2008, the defendants filed their Motion to Dismiss was filed with this Court.

## DISCUSSION

### a. Standard of Review

This motion was filed after defendants filed their answer, and defendants rely in their motion on material contained in and appended to the answer. Therefore, defendants move for dismissal under Rule 12(c) of the Federal Rules of Civil Procedure, which provides: "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."

"Judgment on the pleadings is appropriate where material facts are undisputed and where a judgment on the merits is possible merely by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir.1988); *Miele v. Commissioner of Social Security,* No. 07 Civ. 3227(CM)(KNF), 2008 WL 2388701, at *2 (S.D.N.Y. June 11, 2008). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Cleveland v. Caplaw Enterprises,* 448 F.3d 518, 521 (2d Cir.2006).

In *Bell Atlantic v. Twombly,* 550 U.S. 544, ———–———, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007), the United States Supreme Court addressed the standard for review of a Rule 12(b)(6) motion to dismiss and "retired" the *Conley v. Gibson* standard, which had previously held that dismissal is inappropriate "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief," 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The *Bell Atlantic* Court held that, "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964–65 (internal quotations and citations omitted). To survive a motion to dismiss, a plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 1965 (citations omitted). The Court further noted that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id.* at 1969. Ultimately, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.

The United States Court of Appeals for the Second Circuit has since interpreted the *Bell Atlantic* holding to mean that "the [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible" *Iqbal v. Hasty*, 490 F.3d 143, 157–58 (2d Cir.2007); *see also Fershtadt v. Verizon Communications Inc.*, 550 F.Supp.2d 447, 451 (S.D.N.Y.2008). Where a plaintiff has "not nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Bell Atlantic*, 127 S.Ct. at 1974. On a motion to dismiss, the court must accept all factual allegations in the complaint as true. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, ——, 127 S.Ct. 2499, 2509,

168 L.Ed.2d 179 (2007); *see also Fershtadt*, 550 F.Supp.2d at 451.

■ "Under Fed.R.Civ.P. 12(c), the court may consider, in its discretion and upon notice to all parties, materials outside the pleadings." *Sellers*, 842 F.2d at 642 (internal quotations and citation omitted). However, if the court considers such materials, the motion is treated as one for summary judgment under Fed.R.Civ.P. 56. *Falls Riverway Realty v. City of Niagara Falls*, 754 F.2d 49, 53–54 (2d Cir.1985). Where a district court considers allegations outside the complaint and its exhibits in resolving a Rule 12(b)(6) or Rule 12(c) motion presented to it and does not explicitly give notice that it was converting the Rule 12 motion to a Rule 56 motion, such consideration is ordinarily in error. *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 57 (2d Cir.2007).

In this case, the court is considering only the pleadings themselves and the materials appended thereto.

### b. Title VII Claims are Dismissed for Failure to Exhaust Administrative Remedies

■ For a Title VII charge to be timely "in 'dual filing' states such as New York, a plaintiff must file the charge with the EEOC within 300 days of the allegedly unlawful employment practice." *Henry v. Wyeth Pharmaceuticals, Inc.*, No. 05 Civ. 8106(CM), 2007 WL 2230096, at *28 (S.D.N.Y. July 30, 2007); 42 U.S.C.2000e–5(e)(1); *see also Nat'l R.R. Passenger Corp. ("AMTRAK") v. Morgan*, 536 U.S. 101, 109, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Failure to file a timely EEOC charge results in the dismissal of federal claims. *See Morgan*, 536 U.S. at 109, 122 S.Ct. 2061 ("A claim is time barred if it is not filed within these time limits."); *Butts v. N.Y. Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993) *superceded*

by statute on other grounds as recognized in *Hawkins v. 1115 Legal Serv. Care,* 163 F.3d 684 (2d Cir.1998).

Here, the "allegedly unlawful employment practice" was the wrongful termination on Feb. 18, 2005. However, Mazurkiewicz apparently failed to file a charge within the mandatory 300–day period. While the exact date that the plaintiff filed with the EEOC is not in the record, the EEOC barred his claim because it was untimely filed.[2] *See* Pl. Response Exhibit E. Therefore, the claim must be dismissed for failure to exhaust administrative remedies.

■ Reading plaintiff's responsive papers as liberally as possible as required for a pro se plaintiff, the plaintiff may be trying to argue the 300–day period should be equitably tolled. "[The] time period for filing a charge is subject to equitable doctrines such as tolling or estoppel." *National R.R. Passenger Corp. ("AMTRAK"),* 536 U.S. at 113, 122 S.Ct. 2061; *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Briones v. Runyon,* 101 F.3d 287, 290 (2d Cir.1996). A court may evaluate whether to apply these doctrines, but they are to be applied sparingly. *National R.R. Passenger Corp. ("AMTRAK"),* 536 U.S. at 113, 122 S.Ct. 2061; *see also Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984) (per curiam) ("Procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague

sympathy for particular litigants."). Ultimately, "tolling might be appropriate only where the defendant has actively misled the plaintiff respecting the cause of action, or where the plaintiff has in some extraordinary way been prevented from asserting his rights, or has raised the precise statutory claim in issue but has mistakenly done so in the wrong forum." *Smith v. American President Lines, Ltd.,* 571 F.2d 102, 109 (2d Cir.1978): *Shih v. City of New York,* No. 03 Civ. 8279 LAP, 2006 WL 2789986, at * 3 (S.D.N.Y. Sept. 28, 2006); *see also Electrical Workers v. Robbins & Myers, Inc.,* 429 U.S. 229, 237 n. 10, 238, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

■ Plaintiff contends that, "On or about February 17, 2005, immediately after the wrongful termination, a Mr. Jon Peek from the Social Service Employees Union Local 371 sent a letter enclosing four waiver forms for the Plaintiff directing him to sign without explaining to the Plaintiff what he was signing." *See* Pl. Response ¶ 14. While plaintiff may be implying that the collective bargaining process tolled the statute of limitations, such an argument is meritless. "The existence and utilization of collective bargaining procedures to remedy an alleged wrongful discharge by an employer does not toll the running of the statutory period for filing a charge with the EEOC." *Nweke v. Prudential Ins. Co. of America,* 25 F.Supp.2d 203, 217 (S.D.N.Y.1998); *see also International Union of Elec., Radio and Mach. Workers, AFL–CIO, Local 790 v. Robbins & Myers, Inc.,* 429 U.S. 229, 236, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976).

Alternatively, plaintiff may be trying to contend that the union failed to tell him about his right to file a charge with the EEOC. However, plaintiff alleges no facts

---

2. It is worth noting that the EEOC added in the letter that "it is very unlikely that the EEOC would find a violation if it invested additional resources in this case." *See* Pl. Response Exhibit E.

tending to show that the union failed any said duty, or that it engaged in misleading, fraudulent or deceptive conduct by failing to discuss his EEOC rights with him. There is, therefore, no basis to toll the limitation period to redress inequitable conduct by the union. *See Smith,* 571 F.2d at 109, 111 ("Smith's claim that he had no knowledge of the EEOC because of appellees' failure ... does not in our view allege misleading, fraudulent or deceptive conduct by the appellees sufficient to permit tolling here.").

Finally, plaintiff alleges that he "was never properly and timely informed by Mr. Kriesberg as to his rights to file a claim of employment discrimination with the United States Equal Employment Opportunity Commission upon his appointment." *See* Pl. Response ¶ 19. However, plaintiff does not allege that Kriesberg was hired prior to the expiration of the 300-day period. Hence, there is no evidence that his lawyer neglected to inform plaintiff within the statute of limitations. In any event, what plaintiff is alleging is attorney malpractice. If he has a malpractice claim, he should file it in state court.

There is no basis on this record for an equitable toll. Therefore, plaintiff's Title VII claims are dismissed.

### c. The Remaining Claims Are Barred by the Settlement

Defendants have attached a copy of the settlement agreement, signed by both parties, to the Answer. *See* Answer Exhibit A. Plaintiff does not dispute that his signature appears on every page of the document. In fact, plaintiff admits as much, by attaching his own copy of the signed document to his response to HHC's motion. However, he does imply the document was altered after he signed it, saying that he "discovered" the alteration on February 8, 2008, when he received a countersigned copy. *See* Pl. Response ¶ 4. Plaintiff also

argues that he signed the agreement under economic duress. *See* Pl. Response ¶ 15–17.

The release clearly states in exchange for back pay up to June 30, 2007 and other consideration, "The Union and the Grievant, jointly and severally, release HHC and the facility from any and all claims...." *See* Answer Exhibit A ¶ 11. Therefore, the rest of the plaintiff's claims are foreclosed.

Settlement agreements are considered contracts, "and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa,* 173 F.3d 481, 484 (2d Cir.1999). "If a contract is clear, courts must take care not to alter or go beyond the express terms of the agreement, or to impose obligations on the parties that are not mandated by the unambiguous terms of the agreement itself." *Id. See also Geller v. Branic Intern. Realty Corp.,* 212 F.3d 734, 737 (2d Cir. 2000) ("We have often compared stipulated settlements to contracts, and we have consistently applied the law of contract to disputes concerning the construction and enforcement of settlements."); *accord Jordan v. Verizon Corp.,* No. 02–CV–10144 (GBD), 2007 WL 4591924, at *11 (S.D.N.Y. Dec.27, 2007). Settlements of disciplinary proceedings have been held as binding on the parties and enforceable both in state and federal courts. *See, e.g., McFerran v. Board of Ed., Enlarged City School Dist. of Troy,* 58 A.D.2d 917, 396 N.Y.S.2d 735 (3d Dep't 1977), *aff'd,* 45 N.Y.2d 729, 408 N.Y.S.2d 474, 380 N.E.2d 301 (1978), *cert. den.,* 440 U.S. 923, 99 S.Ct. 1252, 59 L.Ed.2d 477 (1979).

Here, the parties entered into a stipulated settlement to resolve all of plaintiff s disputes regarding his termination on February 18, 2005. *See* Answer Exhibit A. Through this settlement, HHC agreed to

reinstate plaintiff with back pay, sick and annual leave credits, and pension contributions. *See* Answer Exhibit A at ¶¶ 3–6. Plaintiff received over $62,000 pursuant to the settlement. In consideration for this relief, plaintiff waived all rights to commence any and all claims arising from his February 2005 termination. *See id.* at ¶ 11. The "ELEVENTH" Paragraph of the stipulation reads:

The Union and the Grievant, jointly and severally, release HHC and the facility from any and all claims, whether at law, in equity, or in any proceeding arising by virtue of the HHC Personnel Rules and Regulations or by the collective bargaining agreements between HHC, the City of New York and the Union which they may now have, which they have had heretofore, or which they may have in the future in connection with the underlying dispute raised in Case Number A–10982–05.

■ An employee must knowingly and willfully waive a discrimination claim for the waiver to be valid. 42 U.S.C.A. § 2000e *et seq.*; *Bormann v. AT & T Commc'ns, Inc.*, 875 F.2d 399, 402 (2d Cir.1989) (internal quotation marks and citations omitted); *accord Campbell v. Alliance Nat. Inc.*, 107 F.Supp.2d 234, 239–40 (S.D.N.Y.2000). The factors relevant in determining whether a party voluntarily entered into a waiver are: "1) the plaintiffs education and business experience, 2) the amount of time the plaintiff had possession of or access to the agreement before signing it, 3) the role of plaintiff in deciding the terms of the agreement, 4) the clarity of the agreement, 5) whether the plaintiff was represented by or consulted with an attorney, 6) whether the consideration given in exchange for the waiver exceeds employee benefits to which the employee was already entitled by contract or law; 7) whether an employer encourages or discourages an employee to consult an attorney, and 8) whether the employee had a fair opportunity to do so." *Bormann*, 875 F.2d at 403.

■ An analysis of these factors strongly favors upholding the release. While plaintiff was not educated in the United States, and English is his second language, he is obviously highly educated, judging from the papers he has prepared and filed with this court. The settlement agreement was initially received by the plaintiff on May 31, 2007, (*see* Cplt. Exhibits B and C), which means plaintiff had months to possess or access the agreement. He was represented by an attorney and by his union during the settlement negotiations. The terms of the agreement are clear; indeed, they were so clear that plaintiff protested one term (albeit to no avail) before he finally signed the agreement. And as a result of the settlement, plaintiff received numerous benefits-including reinstatement, back pay from the termination date and benefits. Thus, the only proper conclusion is that plaintiff knowingly and willfully signed the settlement.

Plaintiff cites *Siegel v. Ocean Park Housing Co., Inc.*, 248 A.D.2d 459, 460, 668 N.Y.S.2d 932 (2d Dep't 1998), which states, "Stipulations of settlement may be set aside [o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident or lack of authority." *Id.* (internal quotations and citation omitted). There is no evidence of any such circumstance here.

Plaintiff claims, in his response to the motion to dismiss, that the settlement agreement is invalid because he only "discovered" the altered "FOURTH" paragraph of the settlement on February 8, 2008, when the agreement as countersigned was returned to him. *See* Pl. Response at ¶¶ 3–8. Plaintiff contends that the settlement was "tampered with," ostensibly after he signed it. *See* Pl. Response at ¶¶ 3–8.

Unfortunately for plaintiff, a document he attached to his complaint—a document the court is free to consider on this motion—gives the lie to his argument. Plaintiff attaches to the complaint a letter he wrote dated November 1, 2007, in which he protests the change that occurred on October 30, 2007, in the "FOURTH" paragraph of the settlement. *See* Cplt. Exhibit C. The letter clearly demonstrates that the plaintiff knew that the negotiators had inserted a limitation on his back pay into the Settlement Agreement as early as November 1, 2007. *Id.* There is no evidence of a post-signing fraud here. Nor, for that matter, is there any mistake or accident.

■ Plaintiff also suggests that he was compelled to sign the agreement due to economic duress. *See* Pl. Response ¶¶ 11, 15, 16, 17, 24. He argues that a credit card company sued him for failure to make payments and cites his general economic circumstances, *see* Pl. Response ¶¶ 16–17, and he cites *Frumkin v. International Business Machines Corp.*, 801 F.Supp. 1029, 1044 (S.D.N.Y.1992) for the proposition that "courts of this Circuit do recognize avoidance of contractual liability on the grounds of economic duress." *Id.*

■ However, to make out a claim of economic duress, a plaintiff must establish "that the agreement was obtained: (1) by means of wrongful threat precluding the exercise of free will; (2) under the press of financial circumstances; (3) where circumstances permitted no other alternative." *Id.* (internal quotations and citations omitted). In other words, the duress (the threat) must emanate from the party who is attempting to obtain the agreement. Nothing in *Frumkin* suggests otherwise. Here, plaintiff does not plead or otherwise suggest that defendants made any wrongful economic threat against him. Pressure from credit card companies does not mean that HHC obtained the agreement by means of any wrongful threat.

The plaintiff also cites *Cheung v. New York Palace Hotel*, No. 03–CV–0091 DLI WDW, 2005 WL 2387573, at *4 (E.D.N.Y. Sept.28, 2005), presumably for the proposition that, "Although [plaintiff] fails to allege that defendant made a wrongful threat, and states, in a conclusory manner, that she had no other financial alternative to signing the release, these assertions are enough to cast some doubt on the validity of the release and raise a viable claim of duress" that would preclude a dismissal. *Id.* (internal quotations and citation omitted). But *Cheung* is not binding on this court and in any event it appears to be wrongly decided. There is no suggestion in this record that anyone at HHC exerted any improper pressure on plaintiff. *See, e.g., Business Incentives Co. v. Sony Corp. of America*, 397 F.Supp. 63, 69 (S.D.N.Y. 1975). "If the defendant's actions are within his legal rights, plaintiff can not make out a claim of economic duress and the courts will not intervene to void a contract fair on its face. Mere hard bargaining positions, if lawful, and the press of financial circumstances, not caused by the defendant, will not be deemed duress. The alleged duress must be proven to have been the result of defendant's conduct and not of the plaintiffs own necessities." *Id.*

## Conclusion

For the foregoing reasons, the complaint is dismissed, with costs to defendants (but *not* attorneys' fees). The Clerk of the Court shall enter judgment for the defendants and close the file.