MIRIAMA FASAVALU on behalf of herself and as Administrator
of the estate of KEOLANI LEMYIA JENKINS (deceased),
Plaintiffs,

v.

LBJ TROPICAL MEDICAL CENTER, AMERICAN SAMOA
GOVERNMENT, DOES 1 – XX, Defendants.

High Court of American Samoa
Trial Division

CA No. 82-03

July 29, 2005

Before KRUSE, Chief Justice; LOGOAI, Chief Associate Judge; and
ATIULAGI, Associate Judge.

Counsel: For Plaintiffs, Charles V. Ala`ilima
For Defendants, David Cassetty, Assistant Attorney General

ORDER DENYING MOTION TO ENFORCE SETTLEMENT
AGREEMENT

## Introduction

This motion relates to a settlement agreement allegedly reached after
plaintiff Miriama Fasavalu ("Fasavalu"), on her own behalf and on behalf
of her daughter Keolani Lemyia Jenkins ("Jenkins"), now deceased, filed

a tort action on October 15, 2003, for medical malpractice and failure to provide or enforce standards of care for medical treatment. In that complaint, Fasavalu asserted that Jenkins was erroneously diagnosed and denied treatment by staff of Defendant Lyndon B. Johnson Tropical Medical Center ("LBJ") on multiple occasions; that upon recognizing the seriousness of Jenkins condition, LBJ staff failed to act with sufficient urgency; and that upon treatment, Jenkins died during anaesthetization.

After filing this complaint, the parties began to negotiate a settlement. On June 8, 2004, counsel for defendants, then Assistant Attorney General Diane Roy, submitted a letter to plaintiffs' counsel indicating an offer of settlement from LBJ for Fasavalu totaling $100,000. On June 14, 2004, in a letter to counsel Roy, plaintiff authorized a counter-offer of a combined settlement totaling $350,000 for Fasavalu and an unrelated case. On July 7, 2004, counsel Roy submitted another letter indicating an amended offer of settlement from LBJ for Fasavalu totaling $150,000. Subsequent negotiations occurred in electronic correspondence between counsel detailing further settlement negotiations. According to these electronic submissions, counsel Roy on August 24, 2004, informed plaintiff's counsel:

> I finally met with the hospital management regarding Fasavalu . . . They are not willing to pay $200K for the Fasavalu case, but have agreed to get very close. They will agree to make a final offer to settle by paying $180K for a full release and settlement agreement . . . Please present these offers to your clients and let me know if they accept.

Plaintiff's counsel then responded:

> I have talked with my client Miriama and she will accept the settlement of $180,000. I assume the AG's office has a standard settlement agreement for these kinds of cases. If you could e-mail me a draft I will review and if acceptable I will e-mail it through to my office for Miriama's signature . . .

In turn, on August 27, 2004, counsel Roy responded, "I'll get an agreement to you first of next week." Despite this exchange, it appears as if the parties did not in fact come to mutual agreement at that time regarding all the terms of settlement. On September 15th and September 16th, the parties again exchanged e-mails indicating their making certain revisions and asking the other if the changes were acceptable. Finally, on September 22, 2004 counsel Roy sent an e-mail to plaintiff's counsel stating that:

The draft you sent on 9-16 looks fine with the modifications. I had to run it by the AG to see if we could agree to the 'one week' submission language. He said OK. So, go for it and get it back as soon as you can.

In response, plaintiff on September 23 submitted to the Office of the Attorney General a document styled "Settlement and Release Agreement" containing the "one week" language and the $180,000 figure. The document was signed by both plaintiff and her counsel, but it has not been signed by anybody from the Attorney General's office, the American Samoa Government, or LBJ.

On May 27, 2005, plaintiff filed a motion to enforce the claimed settlement agreement, asking the court to compel defendants to comply with the terms of the September 23 document. On July 7, 2005, the motion came on duly for hearing and for reasons given below, we deny the motion at this time.

### Discussion

We note, as does plaintiff, that settlement agreements are contracts that must be interpreted "according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir.1999). In the current case, the September 23 settlement agreement submitted for enforcement only bears plaintiffs' signature, calling into question whether there was indeed the requisite acceptance and mutual assent to the agreement by the parties. Although we agree that the correspondence between the counsel of the parties tends to strongly suggest that the parties did reach agreement to the terms of the September 23 agreement, we further note that "[a]lthough an attorney is presumed to possess authority to act on behalf of the client, a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry." *Surety Ins. Co. of California v. Williams*, 729 F.2d 581, 582-83 (8th Cir.1984).

Here, we have correspondence between the counsel of the parties, but no direct evidence of actual assent to the terms of the agreement by LBJ itself—the party with the actual authority to enter into the agreement. In its response, LBJ's current counsel, Assistant Attorney General David Cassetty, while not denying outright the conclusion of an agreement, seeks a brief spell to confer with his client to ensure that LBJ did in fact give authorization to counsel Roy to enter into the terms of the September 23 settlement agreement. According to counsel, a particular member of the LBJ who was in a position to enlighten on this issue was, at the time of hearing, off-island.

In the circumstances, we conclude that the lack of a signature by defendant or defense counsel casts sufficient doubt on the agreement's finality to preclude enforcement of the agreement until LBJ has been given the opportunity, without delay, to certify that it did in fact agree to the terms set forth within it.

This being said, however, upon confirmation of the September 23, 2004 settlement agreement by LBJ, then LBJ will off course be expected to comply promptly with the terms therein. In the event that LBJ in good faith asserts that no final settlement agreement was ever reached, then we will revisit this enforcement motion based on the facts before us, including LBJ's denial. It is so ordered.